IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN COLLEGE OF CHEST PHYSICIANS, | |
| Plaintiff, | |
| v. | No. |
| CONFERENCE SERIES LLC, OMICS INTERNATIONAL, and IMEDPUB LLC, | |
| Defendants. | |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff AMERICAN COLLEGE OF CHEST PHYSICIANS (the "College"), by and through its attorneys, Vedder Price P.C., for its Complaint for Injunctive and Other Relief (the "Complaint") against Defendants CONFERENCE SERIES LLC, OMICS INTERNATIONAL, and IMEDPUB LLC (each a "Defendant" and, collectively, "Defendants"), states as follows:

## INTRODUCTION

The College is an organization devoted to the prevention, diagnosis, and treatment of chest diseases through education, communication, and research.  The College connects health-care professionals to the latest clinical research and a wide array of evidence-based guidelines by providing educational services, including conducting seminars, conferences, and workshops, and publishing medical journals in print and online.  The College owns U.S. Trademark Registration No. 4,806,922 for the mark and design CHEST for use with educational services, namely, conducting seminars, conferences, and workshops and U.S. Trademark Reg. No. 1,701,750 for

CHEST in connection with medical magazines. Defendants are unlawfully using the College's trademark for their competitive medical conference called "Chest." The College seeks injunctive and other relief for Defendants' trademark infringement pursuant to 15 U.S.C. § 1114 (Count I), federal unfair competition pursuant to 15 U.S.C. § 1125(a) (Count II), trademark dilution pursuant to 15 U.S.C. § 1125(c) (Count III), violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.* (Count IV), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (Count V), common-law trademark infringement (Count VI), and unfair competition under Illinois common law (Count VII). If Defendants are allowed to continue to make unauthorized use of the College's mark, the College will suffer irreparable harm, for which monetary damages will not provide an adequate remedy.

## THE PARTIES

1. The College is a not-for-profit corporation organized under the laws of Illinois with its global headquarters located at 2595 Patriot Boulevard, Glenview, Illinois 60026. The College publishes a medical journal in print and online entitled *CHEST* (the "*CHEST* Journal") under its trademark CHEST.

2. Upon information and belief, Defendant CONFERENCE SERIES LLC ("Conference Series") is a limited liability company organized under the laws of Delaware with a registered agent located at 919 North Market Street, Suite 425, Wilmington, Delaware 19801. Upon information and belief, Conference Series is an event organizer that operates the domain name chest.conferenceseries.com. In particular, Conference Series is purportedly organizing a conference in Dubai under the name "International Conference on Chest" and promoting that conference through the domain name chest.conferenceseries.com.

3. Upon information and belief, Defendant OMICS Group Inc. ("OMICS") is a corporation organized under the laws of Nevada, with a registered agent located at 3773 Howard

Hughes Pkwy, Ste. 500S, Las Vegas, Nevada 89169-6014, which does business as OMICS International. Upon information and belief, OMICS is the parent corporation of Conference Series and is the listed owner of the domain name chest.conferenceseries.com. Upon information and belief, OMICS assists Conference Series in organizing and promoting a conference under the name "International Conference on Chest."

4. Upon information and belief, Defendant IMEDPUB LLC ("IMedPub") is a limited liability company organized under the laws of Delaware with a registered agent at One Commerce Center, 1201 Orange Street, Suite 600, Wilmington, Delaware 19899. Upon information and belief, IMedPub is a subsidiary of OMICS and is an affiliate of Conference Series. IMedPub an academic publisher that operates various journals through its website located at http://imedpub.com. In particular, IMedPub publishes a medical journal under the name "*Insights in Chest Diseases*" through the domain name insightsinchestdiseases.imedpub.com.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Counts I and II of the Complaint under 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a) because those claims involve questions of federal law. This Court also has jurisdiction over Counts IV through VII under 28 U.S.C. §§ 1338(b) and 1367 because those claims are substantially related to the claims in Counts I, II, and III under the U.S. trademark laws. The College seeks injunctive relief and actual damages, including Defendants' profits derived from their unauthorized trademark use and the College's costs and attorneys' fees under 15 U.S.C. § 1117 and 815 ILCS 510/3.

6. This Court has personal jurisdiction over Defendants under the Illinois Long-Arm Statute, 735 ILCS 5/2-209(a)(1) and (2) and (b)(4), because Defendants regularly transact business within Illinois and have committed tortious acts within Illinois causing injury to the

-3-

College within the state.  Further, this Court's exercise of personal jurisdiction over Defendants complies with the due process requirements of the United States Constitution and the Illinois Constitution.

7.      Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this Complaint occurred in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

### The College's Meetings and *CHEST* Journal

8.      The College owns and claims common-law rights under the trademark CHEST for use in connection with its goods and services, including but not limited to publication of its medical journals in print and online and the provision of educational services, including conducting seminars, conferences, and workshops (the "CHEST Mark").

9.      The College owns U.S. Trademark Registration No. 1,701,750 for the CHEST Mark in connection with medical magazines (the "'750 Registration") and U.S. Trademark Registration No. 4,806,922 for the mark and design CHEST for use with educational services, namely, conducting seminars, conferences, and workshops in the fields of health, pulmonology, critical care, and sleep medicine, and distributing course materials related thereto (among other goods and services) (the "'922 Registration") (collectively, the "CHEST Registrations").  Copies of the registration certificates for the CHEST Registrations are attached hereto as Exhibit A.

10.     The application that registered the '750 Registration was filed on August 5, 1991, was registered on July 21, 1992, and claims a first use in commerce of January 1970.  The '750 Registration has been renewed and is incontestable under Section 14 of the Lanham Act. 15 U.S.C. § 1065.

-4-

11.    The application that registered as the '922 Registration was filed on September 18, 2014, was registered on September 8, 2015, and claims a first use in commerce of October 2013.

12.    The College began in 1935 with Murray Kornfeld's dream of creating a society of professionals with the knowledge and zeal to teach thoracic medicine to each other and their peers and of creating a journal devoted to chest diseases and related issues.

13.    In March 1935, the College published the first issue of the *CHEST* Journal under the name "Diseases of the Chest." Below is a true and correct image of the cover of the first issue of the *CHEST* Journal:



CHICAGO/#2884306

14.     From August 9–10, 1935, the College held its first education event in Albuquerque, New Mexico, as the Federation of American Sanatoria.  Two years later, the College was operating under the name "American College of Chest Physicians" and was holding annual meetings as part of its focus on education.

15.     In 1945, the College began providing postgraduate courses throughout the year.

16.     In January 1970, the College began publishing the *CHEST* Journal under the title "CHEST" and promoting its annual meetings and other educational programing under its mark "CHEST."  Since then, the College has continuously published the *CHEST* Journal under the title "CHEST" and provided annual meetings and other educational services under its mark "CHEST" (the "Chest Conferences").

17.     Below are true and correct excerpts from the January 1970 and June 2015 issues of the *CHEST* Journal showing use of the CHEST Mark:




18.     Below are true and correct excerpts from the 2003–2016 College annual meeting abstracts showing use of the CHEST Mark:











19.     In addition to these annual meetings, the College offers a variety of other educational services under the CHEST Mark, including year-round clinical education and live learning sessions.

20.     The *CHEST* Journal features peer-reviewed original research, insights in the multidisciplinary specialties of chest medicine, and world-renowned, evidence-based practice guidelines in lung cancer, thrombosis and antithrombotic therapy, cough, and other related topics.

21.     Editions of the *CHEST* Journal are typically published each month.  The *CHEST* Journal currently has over 20,000 subscribers for its print edition and is viewed over 300,000 times per month online.  Every issue of the *CHEST* Journal is available through the College's website at http://journal.publications.chestnet.org/issues.aspx.  The *CHEST* Journal is distributed both throughout the United States and around the world, and editions are published in regions ranging from Italy to China.

22.     Today, the *CHEST* Journal is available in print, online, on the mobile web, and as an app for iPhone®, iPad®, and iPod® touch.  According to the *Journal Citation Reports*—an annual publication by the Science and Scholarly Research division of Thomson Reuters that ranks journals based on their "impact factor," or the average number of citations to recent articles

-7-

published in each journal—the *CHEST* Journal now has an impact factor that ranks second among journals in the category "Critical Care Medicine"[1] and third among journals in the category "Respiratory Systems."[2]

23.     The College's annual meetings, promoted under the CHEST Mark, generally attract about 5,000 medical professionals from around the world for clinical education in areas such as pulmonary care, critical care, and sleep medicine.

24.     The CHEST Mark has been continuously used in commerce in connection with medical journals since at least January 1970 and continuously used in commerce in connection with medical conferences since at least 2003.

25.     The CHEST Mark is well known in the Chicagoland area, in Illinois, throughout the United States, and around the world.

26.     The College has spent, and continues to spend, substantial sums of money, time, and effort to develop, produce, advertise, and promote the *CHEST* Journal and the Chest Conferences under its CHEST Mark.

27.     As a result of the care and skill exercised by the College, and because of the extensive advertising, promotion, sale, and public acceptance of the College's *CHEST* Journal and the Chest Conferences, the College's CHEST Mark has acquired a fine and valuable reputation.  The public recognizes the College's CHEST Mark and identifies it with the College's products and services exclusively.

28.     The College's CHEST Mark has acquired outstanding celebrity and symbolizes the fine reputation and goodwill that the College has created by providing, distributing, and

---

[1] *See* "Journals Ranked by Impact: Critical Care Medicine." *2013 Journal Citation Reports*. Web of Science (Science ed.). Thomson Reuters. 2014.
[2] *See* "Journals Ranked by Impact: Respiratory Systems." *2013 Journal Citation Reports*. Web of Science (Science ed.). Thomson Reuters. 2014.

selling products and services of high quality by fair and honorable dealing with the industry and the public in the distribution and sale thereof.

29. The College has spent, and continues to spend, substantial sums of money, time, and effort to develop, advertise, and promote the CHEST Mark and related products and services through, in part, use of its chestnet.org website, advertising campaigns, and promotional activities on third-party websites. Such efforts have created and reinforced the association of the CHEST Mark in the minds of medical professionals and the consuming public with the College's products and services.

30. Through the College's extensive promotion, advertising, marketing, and sales of its *CHEST* Journal and the Chest Conferences under the CHEST Mark, the CHEST Mark has become well known to the general public and in the medical industry as a source identifier for the College.

31. The College has also developed substantial goodwill, consumer recognition, and value in its distinctive CHEST Mark, and it has acquired a reputation for quality products and services and nationwide public acceptance.

32. The CHEST Mark identifies the source of the goods and services of the College in the minds of consumers in the marketplace.

### <u>Defendants' Conference Infringes the College's CHEST Mark</u>

33. Upon information and belief, Defendants recently began promoting a forthcoming conference under the name "International Conference on Chest," well after the College's first use of the CHEST Mark.

CHICAGO/#2884306

34.     Below are true and correct images from Defendants' website advertising the forthcoming conference titled "International Conference on Chest":



35.     Defendant's use of "Chest" in a substantially more prominent size and font than the other terms on Defendants' website in connection with the promotion of Defendants' medical conference and website has resulted and will undoubtedly continue to result in confusion among members of the public that such services are actually originating with the College or are related to the College's Chest Conferences.

36.     The forthcoming conference promoted and marketed by Defendants throughout the country and around the world using Defendants' website is advertised, promoted, and marketed in the same channels of commerce as the College's Chest Conferences in the United States, including in this District.

37.     Upon information and belief, in light of the extensive publicity received by the College's Chest Conferences, Defendants were aware of the College's CHEST Mark and the College's hard-earned goodwill at all pertinent times prior to Defendants' first promotion and

-10-

use of the CHEST Mark in connection with the sale and promotion of the conference and Defendants' website.

38.     Further, this Court previously entered a default judgement against Defendant IMedPub based on IMedPub's promotion of a medical journal using the mark CHEST. A copy of that default judgment is attached hereto as <u>Exhibit B</u>. Upon information and belief, as a result of this default judgement, Defendants were aware of the College's CHEST Mark well prior to planning or promoting their forthcoming conference under the title "International Conference on Chest."

39.     Upon information and belief, Defendants have deliberately used the term "Chest" without the College's consent in connection with Defendants' sale and promotion of the conference and Defendants' website seeking to trade upon the College's hard-earned goodwill, and Defendants have deliberately attempted to ride the College's coattails to capitalize on the CHEST Mark.

40.     Upon information and belief, multiple individuals who have previously attended the College's Chest Conferences have been contacted by Defendants regarding Defendants' forthcoming conference, were confused by Defendants' use of the term "Chest," and believed that Defendants' "International Conference on Chest" was sponsored by or associated with the College. Actual confusion has resulted and will likely continue to result from Defendants' conduct unless such conduct is enjoined by this Court.

41.     The College notified Defendant Conference Series of the College's rights in its CHEST Mark and the CHEST Registrations on or around June 13, 2016. A copy of a communication sent to Defendant Conference Series is attached hereto as <u>Exhibit C</u>. Despite the College's request that Defendants cease their infringing activities, Defendants continue to

knowingly and willfully infringe the College's rights in its CHEST Mark and its CHEST Registrations.

42. The College has been, and will continue to be, seriously and irreparably injured unless Defendants' conduct is enjoined by this Court.

**COUNT I**
**TRADEMARK INFRINGEMENT PURSUANT TO**
**SECTION 32 OF THE LANHAM ACT (15 U.S.C. § 1114)**

43. The College restates and realleges Paragraphs 1 through 42 above as though fully set forth herein.

44. The College is the exclusive owner of the CHEST Mark and the CHEST Registrations.

45. Through the College's extensive promotion, advertising, marketing, and sales of its *CHEST* Journal and Chest Conferences under the CHEST Mark, the CHEST Mark has become well known to the general public and in the medical industry as a source identifier for the College. The CHEST Mark distinguishes the College, its goods, its services, and the goodwill associated therewith from its competitors and their goods and services.

46. Section 32 of the Lanham Act provides in pertinent part:

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

-12-

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114.

47. Defendants' use of the CHEST Mark and the CHEST Registrations in marketing, advertising, and providing its substantially similar goods and services is an infringement of the College's well-established trademark rights under U.S. trademark laws and constitutes federal trademark infringement pursuant to Section 32 of the Lanham Act (15 U.S.C. § 1114).

48. Defendants' infringing use of the CHEST Mark and the CHEST Registrations is without license from or permission by the College.

49. Through its infringing use of the CHEST Mark and the CHEST Registrations, Defendants have caused and will continue to cause confusion in the marketplace and mislead the public into believing that Defendants' goods and services are associated with, or connected to, the College, thereby depriving the College of the goodwill attached to its goods and services.

50. Defendants' infringing use of the CHEST Mark and the CHEST Registrations in the same industry as the College is wrongful, intentional, and in deliberate and knowing disregard of the College's exclusive ownership rights. Despite Defendants' direct, actual knowledge of the College's CHEST Mark and the CHEST Registrations, Defendants continue their infringing activities.

51. By reason of Defendants' unlawful activities, the College has been and is likely to be damaged in an amount to be proven at trial, and, unless Defendants' activities are restrained, the College will continue to suffer serious and irreparable injury, for which the College has no

-13-

adequate remedy at law. The College is therefore entitled to a preliminary and permanent injunction against Defendants' further unfair competition in violation of the Lanham Act.

## COUNT II
## FEDERAL UNFAIR COMPETITION PURSUANT TO
## SECTION 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

52. The College restates and realleges Paragraphs 1 through 51 above as though fully set forth herein.

53. The CHEST Mark, as used by the College to identify its *CHEST* Journal, Chest Conferences, and other products and services, is inherently distinctive and/or has acquired secondary meaning in the marketplace.

54. Section 43(a) of the Lanham Act provides in pertinent part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

55. Defendants' use of the term "Chest" in connection with their forthcoming conference, their website, and related products and services highly similar to, and directly competitive with, products and services provided by the College under the CHEST Mark constitutes a false designation of origin, a false and misleading description of fact, and/or a false

and misleading representation of fact that is likely to cause confusion and to cause mistake, and to deceive by wrongly suggesting some affiliation, connection, or association between Defendants products and services and the College. Such use by Defendants has created and is also likely to create confusion, and has caused and is also likely to cause mistake or to deceive as to the origin, sponsorship, or approval of Defendants' sale of these products and services by the College, in violation of 15 U.S.C. § 1125.

56. Defendants deliberately and knowingly adopted, used, and continues to use the CHEST Mark in bad faith, with the intent to trade upon the goodwill established by the College, to create confusion in the public mind, and to misappropriate the College's rights in the goodwill it has established in the CHEST Mark, and Defendants have damaged the College by such acts.

57. By reason of Defendants' unlawful activities, the College has been and is likely to be damaged in an amount to be proven at trial, and, unless Defendants' activities are restrained, the College will continue to suffer serious and irreparable injury, for which the College has no adequate remedy at law. The College is therefore entitled to a preliminary and permanent injunction against Defendants' further unfair competition in violation of the Lanham Act.

**COUNT III**
**TRADEMARK DILUTION PURSUANT TO**
**SECTION 43(c) OF THE LANHAM ACT (15 U.S.C. § 1125(c))**

58. The College restates and realleges Paragraphs 1 through 57 above as though fully set forth herein.

59. The College's CHEST Mark and the CHEST Registrations are widely recognized by the general consuming public and medical professionals in the United States as a designation of source of the College's goods and services.

60. Section 43(c) of the Lanham Act provides in pertinent part:

c) Dilution by blurring; dilution by tarnishment

-15-

(1) Injunctive relief

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c).

61.    The College's CHEST Mark has become famous, *inter alia*, due to (1) the College's extensive use of its CHEST Mark since at least January 1970, (2) the significant sales of goods and services under the CHEST Mark, including the widespread distribution of the College's *CHEST* Journal and widespread attendance at the College's Chest Conferences; and (3) the College's extensive advertising and marketing activities under the CHEST Mark.

62.    Defendants' infringing activities are likely to harm the College by impairing the distinctiveness of the CHEST Mark.

63.    Defendants' infringing activities are likely to harm the College by harming the reputation or goodwill symbolized by its CHEST Mark, since Defendants' use is not controlled or monitored by the College.

64.    By reason of Defendants' unlawful activities, the College has been and is likely to be damaged in an amount to be proven at trial, and, unless Defendants' activities are restrained, the College will continue to suffer serious and irreparable injury, for which the College has no adequate remedy at law.  The College is therefore entitled to a preliminary and permanent injunction against Defendants' further unfair competition in violation of the Lanham Act.

-16-

**COUNT IV**
**VIOLATION OF THE ILLINOIS UNIFORM**
**DECEPTIVE TRADE PRACTICES ACT (815 ILCS 510/1 *ET SEQ*.)**

65.     The College restates and realleges Paragraphs 1 through 64 above as though fully

set forth herein.

66.     Section 510/2 of the Illinois Uniform Deceptive Trade Practices Act (the

"UDTPA") provides in relevant part:

> A person engages in deceptive trade practices when, in the course
> of his business, location, or occupation, he:
>
> (1)     passes off goods or services of those of another;
>
> (2)     causes likelihood of confusion or of misunderstanding as to
> the source, sponsorship, approval or certification of goods or
> services;
>
> (3)     causes likelihood of confusion or of misunderstanding as to
> the affiliation, connection or association with or certification by
> another;
>
> .    .    .
>
> (12)    engages in any other conduct which similarly creates a
> likelihood of confusion or of misunderstanding.

815 ILCS 510/2.

67.     By promoting similar medical conferences and related products and services using

the College's CHEST Mark, Defendants have violated the UDTPA.

68.     Defendants' use of the CHEST Mark constitutes infringement when used in

connection with medical journals and related services offered by Defendants without the

College's consent.  Defendants' use is an attempt to pass off Defendants' goods and/or services

as those of the College and causes a likelihood of confusion or of misunderstanding as to the

source, sponsorship, approval, or certification of Defendants' goods or services, all in violation

of Section 2 of the UDTPA.

-17-

69.     Defendants have willfully engaged in deceptive trade practices prohibited by Section 2 of the UDTPA, in that Defendants adopted, used, and continue to use the CHEST Mark with the intent to trade upon the goodwill established by the College under its CHEST Mark, to create confusion in the public mind and to misappropriate the College's rights in the goodwill it has established, all to the irreparable injury of the College.

70.     Defendants' wrongful actions have caused and are likely to cause and, if not enjoined, will cause, deception, confusion in the marketplace, and irreparable harm to the College and the College's goodwill and exclusive trademark ownership rights, for which the College has no adequate remedy at law.

71.     Defendants' actions are deliberate, willful, and in complete disregard for the College's rights, of which Defendants have actual and constructive knowledge.

**COUNT V**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND**
**DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1 *ET SEQ.*)**

72.     The College restates and realleges Paragraphs 1 through 71 above as though fully set forth herein.

73.     Section 505/2 of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "CFDBPA") provides:

> Unfair deceptive acts or practices, including but not limited to . . . the use or employment or any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, and the conduct of any trade or commerce are hereby declared unlawful whether in fact any person has been misled, deceived or damaged thereby.

815 ILCS 505/2.

74.     Defendants' violation of the UDTPA, by their use and employment of deceptive trade practices, constitutes a violation of Section 2 of the CFDBPA.

-18-

75.     The unlawful activities of Defendants complained of herein have caused and, unless restrained and enjoined, will cause irreparable harm, damage, and injury to the College, for which the College has no adequate remedy at law.

**COUNT VI**
**COMMON-LAW TRADEMARK INFRINGEMENT**

76.     The College restates and realleges Paragraphs 1 through 75 above as though fully set forth herein.

77.     The College has common-law rights in its CHEST Mark based on its continuous use of its CHEST Mark in Illinois and throughout the United States in connection with medical journals and related products and services.

78.     Defendants' unauthorized use of the CHEST Mark to promote, advertise, market, and/or sell their goods has caused and is likely to cause confusion, mistake, and deception of the public as to the identity and origin of Defendants' goods, or as to a connection or affiliation with the College, or permission from the College, that does not exist, causing irreparable harm to the College for which there is no adequate remedy at law.  Defendants' conduct thus constitutes common-law trademark infringement.

79.     Despite their actual and constructive knowledge of the College's ownership and prior use of its CHEST Mark, Defendants have continued to use the College's CHEST Mark without the College's authorization or consent.  Defendants' actions are deliberate and willful and have been done with the intention of trading upon the valuable goodwill built up by the College in its CHEST Mark.

80.     Defendants' wrongful actions have caused and are likely to cause and, if not enjoined, will cause deception, confusion in the marketplace, and irreparable harm to the College

-19-

and the College's goodwill and exclusive trademark ownership rights, for which the College has no adequate remedy at law.

81.     Defendants' actions are deliberate, willful, and in complete disregard for the College's rights, of which Defendants have actual and constructive knowledge.

## COUNT VII
## UNFAIR COMPETITION UNDER ILLINOIS COMMON LAW

82.     The College restates and realleges Paragraphs 1 through 81 above as though fully set forth herein.

83.     By promoting a similar medical conference and related products and services using the College's CHEST Mark, Defendants are using and plan to use marks that are associated or affiliated with or sponsored by the College, thus creating a likelihood of confusion between the products sold by Defendants and the products of the College.  Defendants are thereby engaging in unfair competition with the College.

84.     The acts of Defendants complained of herein constitute inequitable pirating of the fruits of the College's labor and are acts of unfair competition in violation of Illinois common law.

85.     Defendants' actions are deliberate, willful and in complete disregard for the College's rights, of which Defendants have actual and constructive knowledge.

CHICAGO/#2884306

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff AMERICAN COLLEGE OF CHEST PHYSICIANS prays that this Court enter a judgment:

A.      that Defendants have infringed the College's rights in the CHEST Mark and the CHEST Registrations and competed unfairly with the College by using the CHEST Mark to promote and offer similar medical conferences and related goods and services;

B.      that Defendants have unfairly competed with the College and have violated the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.,* and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*;

C.      that Defendants, together with their officers, agents, servants, employees, attorneys, importers, suppliers, related entities (including parents, subsidiaries, and other affiliates), and all persons in active concert and participation with them who receive notice, are preliminarily and permanently enjoined from:

1.      using the CHEST Mark, the term "Chest," or any confusingly similar variations thereof in connection with the advertising, marketing, promotion, and/or sale of any products or services that are reasonably related to the College's products and services;

2.      unfairly competing with the College; and

3.      causing a likelihood of confusion or misunderstanding as to source, sponsorship, approval, or certification of their products or as to any affiliation, connection, or association of them with or approval of them by the College, or engaging in any other conduct that similarly creates a likelihood of confusion or misunderstanding or false representation with respect to the College; and

CHICAGO/#2884306

D.      directing Defendants to deliver up to this Court for destruction, pursuant to 15 U.S.C. § 1118, any tags, labels, or other materials in their possession using the CHEST Mark and to refund any monies paid for products wrongfully sold under the CHEST Mark to their customers;

E.      directing Defendants to account for and pay to the College all profits received from the sale of products and services under the CHEST Mark;

F.      directing Defendants to pay to the College its actual damages on account of Defendants' infringement, unfair competition, and false representation, including, but not limited to, the reasonable value of the use of the CHEST Mark to Defendants and that, in view of the flagrant and deliberate character of such infringement and unfair competition, such damages be trebled;

G.      awarding the College its reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a) and 815 ILCS 510/1 *et seq.*; and

H.      awarding such other and further relief in favor of the AMERICAN COLLEGE OF CHEST PHYSICIANS as this Court deems proper and just.

## **DEMAND FOR JURY TRIAL**

The College demands trial by jury.

Respectfully submitted,

AMERICAN COLLEGE OF CHEST
PHYSICIANS

By:    /s/ Robert S. Rigg
        One of Its Attorneys

Michael E. Reed
Robert S. Rigg
John K. Burke
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
T:  +1 (312) 609 7500

Dated:     September 27, 2016

**EXHIBIT A**

Int. Cl.: 16

Prior U.S. Cl.: 38

Reg. No. 1,701,750

## United States Patent and Trademark Office     Registered July 21, 1992

### TRADEMARK
### PRINCIPAL REGISTER

### CHEST

AMERICAN COLLEGE OF CHEST PHYSI-
CIANS (ILLINOIS CORPORATION)
3300 DUNDEE ROAD
NORTHBROOK, IL 600622348

FIRST USE 1-0-1970; IN COMMERCE
1 0 1970.

SER. NO. 74 191,449, FILED 8 5 1991

FOR: MEDICAL MAGAZINE, IN CLASS 16
(U.S. CL. 38).

LINDA K. MCLEOD, EXAMINING ATTORNEY

# United States of America
## United States Patent and Trademark Office

 CHEST

**Reg. No. 4,806,922**
**Registered Sep. 8, 2015**

**Int. Cls.: 9, 16, 35 and 41**

**TRADEMARK**

**SERVICE MARK**

**PRINCIPAL REGISTER**

AMERICAN COLLEGE OF CHEST PHYSICIANS (ILLINOIS NON-PROFIT CORPORATION)
2595 PATRIOT BOULEVARD
GLENVIEW, IL 60026

FOR: DIGITAL MEDIA, NAMELY, DVDS AND DOWNLOADABLE AUDIO AND VIDEO FILES, CONTAINING EDUCATIONAL MATERIALS IN THE FIELD OF HEALTH EDUCATION, NAMELY, MATERIALS RELATED TO LUNG HEALTH AWARENESS, TOBACCO PREVENTION, CARDIOPULMONARY MEDICINE, CRITICAL CARE, AND SLEEP MEDICINE; MOBILE APPS, NAMELY, COMPUTER SOFTWARE APPLICATIONS FOR MOBILE PHONES FOR USE IN CONNECTION WITH PROVIDING ACCESS TO MOBILE VERSIONS OF JOURNALS AND PUBLICATIONS, EDUCATIONAL RESOURCES OR MEETING MATERIALS, IN THE FIELD OF HEALTH EDUCATION RELATED TO LUNG HEALTH AWARENESS, TOBACCO PREVENTION, CARDIOPULMONARY MEDICINE, CRITICAL CARE, AND SLEEP MEDICINE, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 10-0-2013; IN COMMERCE 10-0-2013.

FOR: PRINTED PUBLICATIONS, NAMELY, PROFESSIONAL JOURNALS AND NEWSLETTERS, IN THE FIELD OF TREATMENT OF HEART AND LUNG DISEASE, AS WELL AS SELF-EDUCATION AND EVALUATION BOOKS, PRINTED BOOKS, MAGAZINES, AND PRINTED PERIODICALS IN THE FIELD OF MEDICAL EDUCATION FOR PHYSICIANS, IN CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

FIRST USE 10-0-2013; IN COMMERCE 10-0-2013.

FOR: ASSOCIATION SERVICES, NAMELY, PROMOTING THE INTERESTS OF SPECIALISTS IN PULMONOLOGY, CRITICAL CARE AND SLEEP MEDICINE, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 10-0-2013; IN COMMERCE 10-0-2013.

FOR: EDUCATIONAL SERVICES, NAMELY, CONDUCTING SEMINARS, CONFERENCES, AND WORKSHOPS IN THE FIELDS OF HEALTH, PULMONOLOGY, CRITICAL CARE, AND SLEEP MEDICINE, AND DISTRIBUTING COURSE MATERIALS RELATED THERETO, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 10-0-2013; IN COMMERCE 10-0-2013.



*Michelle K. Lee*

Director of the United States
Patent and Trademark Office

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| AMERICAN COLLEGE OF CHEST PHYSICIANS,<br><br>     Plaintiff,<br><br>v.<br><br>IMEDPUB LLC,<br><br>     Defendant. | No. 1:15-cv-05014<br><br>Judge: John Z. Lee<br>Magistrate: Daniel G. Martin |

**DEFAULT JUDGMENT AND
ORDER FOR PERMANENT INJUNCTION**

Before the Court is a Motion for Default Judgment filed by Plaintiff American College of Chest Physicians (the "College") against Defendant IMEDPUB LLC ("Defendant").

On June 8, 2015, the College filed a Complaint for Injunctive and Other Relief against Defendant. Defendant was properly served with the Complaint and a copy of the summons on June 19, 2015, and the Executed Return of Service was filed with this Court on June 25, 2015. The time for Defendant to answer the Complaint expired on July 14, 2015.

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, on September 3, 2015, this Court, the Honorable John Lee presiding, entered an Order of Default against Defendant IMEDPUB LLC. The College now has moved for entry of a default judgment on all counts of the Complaint against the Defendant pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. The College's motion is hereby granted, and **IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** as follows:

    1.    This Court has jurisdiction over the subject matter of this case and the parties hereto.

    2.    Venue and service of process are proper.

    3.    The College owns Federal Trademark Registration No. 1,701,750 for the mark CHEST for medical journals and owns common-law rights based on its longstanding use of this mark.

CHICAGO/#2763720.3

CHICAGO/#2884306

4.      Defendant has infringed the College's Federal Trademark Registration No. 1,701,750 for the mark CHEST pursuant to 15 U.S.C. § 1114 through Defendant's use of the term CHEST in association with Defendant's journal, website, domain name and related products and services.

5.      Defendant has competed unfairly with the College in violation of 15 U.S.C. § 1125(a) through its use of the term CHEST in association with Defendant's journal, website, domain name and related products and services.

6.      Defendant's use of the College's mark CHEST in association with Defendant's journal, website, domain name and related products and services is in violation of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/1 *et seq.*) and the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.*).

7.      Defendant has infringed the College's common-law rights in the College's mark CHEST through Defendant's use of the term CHEST in association with Defendant's journal, website, domain name and related products and services.

8.      Pursuant to 15 U.S.C. § 1116(a), Defendant is enjoined from using the College's mark CHEST alone or as the most prominent part of: (i) the title of Defendant's journal, both in electronic and print form (including as part of the expression "Journal of Chest," "Chest Journal," and/or "Insights in Chest Diseases" with the term "Chest" more prominent than any other word in the expression); (ii) Defendant's website(s) used for promoting or distributing Defendant's journal; (iii) Defendant's domain name(s) used for promoting or distributing Defendant's journal (including the domain name chest.imedpub.com); (iv) Internet metatags, keywords for Internet search engines, post URL or forwarding commands, hyperlinks and any other electronic coding or search terms used to promote or advertise Defendant's journal.

9.      The Clerk shall issue any writs as may be necessary to carry out the instant Judgment.

      SO ORDERED.

      Dated: 10/15/15

                                      John Z. Lee
                                      United States District Court Judge

CHICAGO/#2763720.3

2